Filed 6/18/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| MARY HANNA, | B283776 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC552038) |
| v. | |
| MERCEDES-BENZ USA, LLC, | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court for the County of Los Angeles, Barbara A. Meiers, Judge. Reversed and remanded with directions.

Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante for Plaintiff and Appellant.

Universal & Shannon, Jon D. Universal and James P. Mayo for Defendant and Respondent.

———————————————————

To settle Mary Hanna's lawsuit under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), Mercedes-Benz USA, LLC agreed on January 27, 2017 to pay Hanna $60,000 plus a sum equal to her costs and expenses in pursuing the action, "including attorney's fees based on actual time reasonably incurred . . . pursuant to Civil Code Section 1794(d), to be determined by court motion if the parties cannot agree." After failing to reach agreement with Mercedes-Benz, Hanna moved for an award of $259,068.75 in attorney fees using the lodestar method[1]—a $172,712.50 base amount with a 1.5 multiplier—and costs of $15,547.07. The trial court awarded only $60,869 in fees, limiting Hanna's recovery for fees incurred after January 21, 2016 to $15,000 based on the court's interpretation of a percentage-based contingency fee provision in the retainer agreement between Hanna and her counsel. The court awarded all costs sought by Hanna except for $2,137.86 paid to her initial expert.

On appeal Hanna contends the court abused its discretion in failing to apply the lodestar method to determine attorney fees for the period after January 21, 2016 and by disallowing the fee paid to her first expert as a recoverable cost. We agree the court used, in part, an improper method to determine reasonable

---

[1] Using the lodestar method to calculate attorney fees, "the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985; see *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49.)

2

attorney fees and remand for it to recalculate Hanna's fee award. We affirm the court's cost award.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Circumstances Leading to the Filing of Hanna's Complaint*

On August 12, 2007 Hanna purchased a new vehicle from Mercedes-Benz for $52,948.54, including sales tax, license fees and other charges. The car immediately exhibited a problem with its rear seatbelt, which failed to retract, requiring Mercedes-Benz to install new seatbelt components. Additional concerns surfaced within the first 18 months, and during the next several years Mercedes-Benz made warranty repair attempts on at least 20 occasions for a variety of problems.

On May 9, 2014 Hanna requested Mercedes-Benz repurchase the vehicle. Mercedes-Benz denied the request. On July 17, 2014 Hanna sued Mercedes-Benz for violation of the refund-or-replace provisions of the Song-Beverly Act.[2] Her complaint sought an award of actual damages, a civil penalty of two times actual damages[3] and attorney fees and costs.

---

[2] The Song-Beverly Act requires a manufacturer that gives an express warranty on a new motor vehicle to service or repair that vehicle to conform to the warranty. If the manufacturer is unable to do so after a reasonable number of attempts, the purchaser may seek replacement of the vehicle or restitution in an amount equal to the purchase price less an amount directly attributable to use by the purchaser prior to the discovery of the nonconformity. (Civ. Code, § 1793.2, subd. (d); see *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1250.)

[3] The Song-Beverly Act authorizes a civil penalty of up to two times the amount of actual damages if the purchaser establishes

## 2. *Mercedes-Benz's Offers To Compromise*

After Hanna filed her lawsuit, Mercedes-Benz served a series of offers to compromise pursuant to Code of Civil Procedure section 998 (section 998). The first section 998 offer on October 8, 2014 provided for a judgment against Mercedes-Benz in the amount of $5,000, plus reasonably incurred attorney fees and costs to be determined by the court if the parties could not agree. Hanna did not accept the offer.

In May 2015 Hanna's vehicle was involved in an accident and deemed a total loss by her insurer. Hanna did not notify Mercedes-Benz that she no longer owned the car.

Mercedes-Benz's second section 998 offer to compromise, dated January 20, 2016,[4] required Hanna to surrender the vehicle and dismiss her action with prejudice; in return Mercedes-Benz would "make restitution pursuant to Civil Code section 1793.2(d)(2)(B) in an amount equal to the actual price paid for the vehicle, including any charges for the transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, and registration fees and other official fees, plus any incidental and consequential damages to which the buyer is entitled under Civil Code Sections 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred

the manufacturer's failure to comply with the Act's provisions was willful. (Civ. Code, § 1794, subd. (c).)

[4] Although dated January 20, 2016, this offer was identified as the January 21, 2016 offer by the court, apparently because it was not served on—or, perhaps, not received by—Hanna's counsel until January 21, 2016.

by the buyer, less a reasonable mileage offset in accordance with Civil Code Section 1793.2(d)(2)(C), all to be determined by court motion if the parties cannot agree." The offer provided Mercedes-Benz would pay Hanna's reasonable attorney fees and costs and required her to execute a general release.

In February 2016 Hanna served written objections to the second offer, asserting it was vague, ambiguous and uncertain as to the damages or recovery being offered. She also objected to the requirement she return the vehicle on the ground of impossibility, explaining the car had been declared a total loss following an accident and was no longer in her possession. She further objected to the requirement she enter into a general release because the terms of the proposed release were not made known to her.

On January 17, 2017 Mercedes-Benz served its third section 998 offer to compromise, which it titled "Amended Offer to Compromise." This offer included similar language regarding restitution as the second offer, but omitted the requirement that Hanna return the vehicle. Instead, the offer permitted Mercedes-Benz to deduct from the sum to be paid to Hanna the amount she had received from her insurer when her car had been declared a total loss. This offer no longer required execution of a release.

On January 23, 2017 Mercedes-Benz served a fourth section 998 offer, titled "Second Amended Offer to Compromise," and on January 27, 2017 its fifth section 998 offer, titled "Third Amended Offer to Compromise." The January 23, 2017 offer deleted the language regarding restitution (including the reference to deductions for a reasonable mileage offset and amounts received from the May 2015 accident) and instead provided for payment of $55,000 to Hanna. The January 27, 2017

5

offer, otherwise identical to the January 23, 2017 offer, proposed a payment to Hanna of $60,000.

Paragraph 2 of the January 27, 2017 offer stated, "In connection with the above offer to compromise, [Mercedes-Benz] will pay [Hanna] a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time reasonably incurred in connection with the commencement and prosecution of this action pursuant to Civil Code Section 1794(d), to be determined by court motion if the parties cannot agree." Hanna accepted the January 27, 2017 offer the same day.

3. *Hanna's Motion for Attorney Fees and Costs*

On March 30, 2017 Hanna moved for attorney fees and costs pursuant to Civil Code section 1794, subdivision (d). Hanna's motion was supported by the declarations of the attorneys and paralegals who had worked on the matter and included invoices billed to Hanna among its exhibits.

Hanna sought a total of $274,615.82 in fees and costs, which included a request her lodestar attorney fees of $172,712.50 be multiplied by 1.5. She argued the multiplier was justified, in part, by the fact the law firm of O'Connor & Mikhov LLP had taken the matter on a contingent basis.

The fees and costs request included $2,137.86 for a vehicle inspection performed on February 12, 2015. Mark O'Connor, Hanna's lead counsel, attached to his March 30, 2017 declaration an O'Connor & Mikhov cost invoice that included an entry dated February 24, 2015 stating the vehicle inspection charge was per "Thomas Lepper's Invoice (11.5 hrs)." Hanna provided no explanation of Lepper's identity or role in the litigation or any other information to support the claimed cost.

6

### 4. *Mercedes-Benz's Opposition*

Mercedes-Benz filed its opposition to Hanna's attorney fee motion on April 12, 2017.  Mercedes-Benz contended the Song-Beverly Act, which provides for recovery of reasonably incurred attorney fees, did not mandate use of the lodestar method and argued the trial court had discretion to determine what constituted reasonably incurred fees, including no fee at all.  It argued the issue before the court was whether Hanna's attorney fees generated after its January 20, 2016 section 998 offer were reasonably incurred.  Mercedes-Benz asserted the January 2016 offer would have provided Hanna the relief to which she was entitled under the Song-Beverly Act and that Hanna had an implied duty to negotiate with Mercedes-Benz following the offer in a good faith effort to settle the case.  According to Mercedes-Benz, the trial court had discretion to deny fees after the January 2016 offer because of Hanna's failure to engage in good faith negotiations.

Mercedes-Benz also asserted Hanna had failed to meet her burden of establishing the reasonableness of the fees and costs requested because she had not submitted a copy of the retainer agreement with her counsel for the court's review.  Mercedes-Benz stated it understood the fee agreement was not on a contingency basis and specified lower hourly billing rates than reflected on the invoices sent to Hanna and used to calculate her lodestar figure.[5]  It urged the court to award fees, if at all, on the basis of the fee agreement's lower rates.

---

[5]     For example, although the motion and billing records reflected an hourly rate of $650 for partner Mark O'Conner, Mercedes-Benz told the court the fee agreement stated the hourly billing rate for all partners in the firm was $350.

In addition, Mercedes-Benz explained, although Hanna's fee agreement generally provided for payment of fees calculated on an hourly, not a percentage, basis (owed by "the manufacturer," not Hanna), it also required payment of additional attorney fees in the event Hanna's attorneys recovered a damage award exceeding her actual damages. Specifically, the fee agreement provided 40 percent of any amount recovered in excess of actual damages would be due from Hanna as additional attorney fees.

Mercedes-Benz contended Hanna's actual damages were $22,428.32: $52,590.54 (the price of the vehicle) less $14,998.02 (the amount Hanna had received from her insurer after the vehicle was declared a total loss) and $15,163.60 (the mileage offset). It asserted, therefore, that $37,571.68 of its $60,000 settlement payment was the excess amount subject to the 40 percent provision in the retainer agreement and that the $15,028.67 Hanna owed her attorneys (40 percent of $37,571.68) should be offset against the fees claimed by Hanna in her motion.

Finally, Mercedes-Benz argued Hanna was not entitled to a lodestar multiplier; a significant number of attorney billing entries were improperly in block billing format; the case was overstaffed; and certain categories of fees and costs were not reasonably incurred for a variety of reasons, including $2,137.86 in costs for Lepper's vehicle inspection. Mercedes-Benz explained Lepper was Hanna's "first expert" but had not "actually [been] used as an expert" in the case. He had subsequently been replaced by Darrell Blasjo, who was designated a retained expert by Hanna and deposed by Mercedes-Benz. At his deposition Blasjo testified Lepper had never shared his work product with Blasjo.

Mercedes-Benz supported its opposition with the declaration of its attorney Mark Julius, dated April 12, 2017. In a one-sentence statement Julius declared all of the factual representations in the opposition memorandum were true and accurate to the best of his knowledge.

5. *Hanna's Reply*

Hanna filed her reply on April 18, 2017. Among other arguments Hanna disputed Mercedes-Benz's assertion her attorneys had not taken her case on a contingency basis. She also filed objections to Julius's April 12, 2017 declaration, but did not object on the ground that any material in Mercedes-Benz's papers was protected from disclosure by Hanna's attorney-client privilege.

6. *The Hearing on Hanna's Fee Motion*

At the outset of the April 25, 2017 hearing on Hanna's motion for attorney fees and costs, the court stated its "very tentative" inclination was to cut short attorney fees after the January 2016 settlement efforts. It also stated it might substantially reduce the fees requested in other respects. The court asked Hanna's attorney to provide a copy of Hanna's fee agreement because "according to the defense argument, in your contract the attorney fee hourly rate was stated to be 300 and some-odd dollars per hour for your lead attorney, and in your paperwork you claimed that his rate is 600 and some-odd dollars per hour."

Turning to Mercedes-Benz, the court expressed concern that the company had failed to specify in its opposition papers which attorney billing entries reflected services it claimed were duplicative or otherwise objectionable and had failed to indicate

9

what Mercedes-Benz contended would constitute a reasonable fee. The court ordered Mercedes-Benz to provide that information within 10 days. It also ordered Hanna to provide her attorney fee agreement within the same time.

7. *Post-hearing Developments*

On April 28, 2017 Hanna filed a response to the court's order that she submit her fee agreement, arguing the agreement was protected by the attorney-client privilege. Because she did not wish to waive the privilege, disobey the court or be held in contempt, she requested the court modify its April 25, 2017 order to allow her to submit a redacted copy of the fee agreement. She also explained the agreement reflected the matter had been taken on a contingency basis and disclosed the hourly rates applicable to the case.

On May 2, 2017 the trial court issued a modified ruling withdrawing that portion of its April 25, 2017 order requiring Hanna to submit the retainer agreement. Instead, the court ordered Mercedes-Benz to provide the documents on which it had relied to assert its understanding of the contents of Hanna's fee agreement.

Later that day Mercedes-Benz filed another Julius declaration, which attached a copy of a fee agreement, dated June 11, 2014, between Hanna and her husband Reda Hanna, on the one hand, and the O'Connor & Mikhov law firm, on the other hand, confirming the firm's representation of the Hannas "in connection with your lemon law/breach of warranty claim against Mercedes-Benz USA, LLC." Julius explained the fee agreement had been voluntarily produced by Reda Hanna at his deposition on May 5, 2015.

The June 11, 2014 fee agreement stated, in part, "YOU NEVER PAY ATTORNEY FEES.  THE ATTORNEYS' FEES ARE PAID BY THE MANUFACTURER.  [¶]  Attorney's fees are contingent upon an acceptable settlement being achieved or a successful verdict at trial.  THIS MEANS THAT THERE ARE NO ATTORNEY FEES PAID IF THERE IS NO SETTLEMENT OR IF WE DO NOT WIN AT TRIAL. . . .  [¶]  . . .  [¶]  In the event that your case goes to trial and we prevail, Law Firm will file a motion with the Court for an award of attorney fees.  Any attorneys' fees awarded will belong to Law Firm.  IF NO FEES ARE AWARDED, YOU DO  NOT HAVE TO PAY THE LAW FIRM ATTORNEY FEES."

The agreement provided for fees based on the time expended at $350 to $650 per hour for partners and $200 to $300 per hour for associates, and explained the "above contingent fee is not based on a percentage basis."  According to the agreement, "[i]f a lawsuit is required, Attorney shall receive from Defendant(s), a fee of his actual time expended on the case calculated at his customary hourly rate (or other fee as may be agreed upon between Attorney and Defendant(s))."

The agreement also provided, "In some instances we are able to recover additional damages above and beyond Client's actual damages.  In only those instances where we are able to recover additional damages, 40% of those additional damages shall be due the Law Firm as additional attorney's fees.  Examples of additional damages include civil penalties, punitive damages, waiver of mileage/use offset, waiver of negative equity on a traded-in vehicle and include any instance where the firm is

11

able to obtain damages beyond Client's statutory lemon law/breach of warranty recovery."[6]

On May 5, 2017 Mercedes-Benz filed the declaration of its attorney Jon Universal. Universal stated any attorney-client privilege protecting the Hanna fee agreement from disclosure had been waived. According to Universal, the agreement had been voluntarily produced at Reda Hanna's deposition while Mr. Hanna was represented by O'Connor & Mikhov LLP. Universal also explained O'Connor & Mikhov LLP lodged no objection to production of the fee agreement by Mr. Hanna, never demanded the agreement be immediately returned and never filed a motion with the court or made any other effort to seek return of the agreement.

On May 15, 2017 Mercedes-Benz filed another Julius declaration describing its proposed adjustments to Hanna's requested fees and costs in compliance with the court's order at the April 25, 2017 hearing. Among the reductions proposed was disallowing the cost of Lepper's vehicle inspection. With respect to Hanna's attorney fees, Julius proposed cutting off fees as of January 20, 2016, the date of the prior section 998 offer. Julius also proposed recalculating all services performed by associates at the lower hourly rate of $200 and all services performed by partners at the lower hourly rate of $350. Of the $172,712.50 in

---

[6] The agreement also provided, "In the unlikely event Client consents to a settlement, dismissal, or otherwise terminates the case (1) without a provision for actual Attorney's fees incurred or (2) without a provision that allows Law Firm to file a motion for the court to determine the amount of Attorney's fees, without Attorney's consent, Client shall be responsible for Attorney's fees and costs that have been billed in litigating your case (as detailed above) or $2,500.00, whichever is greater."

12

total attorney fees reflected in the invoices from O'Connor & Mikhov LLP to Hanna, Mercedes-Benz contended only $13,852.50 constituted reasonable fees.

### 8. *The Court's Ruling Awarding Fees and Costs*

On May 16, 2017 the trial court issued its ruling and order, granting Hanna $60,869 in attorney fees and all costs as requested except $2,137.86 for the payment to Lepper. According to the court, the sum awarded for fees included $45,869, the amount "claimed as set forth in the plaintiff's moving papers" to have been incurred by Hanna for the period through January 21, 2016, the "date by which plaintiffs had successfully negotiated for a payment by the defendant of all sums generally to be encompassed and provided in a successful 'lemon law' action."

The court explained, "Thereafter, plaintiff continued with the action and in January 2017 obtained a settlement offer considerably in excess of that which had been proffered in January 2016"; "[h]owever, the settlement offer finally made included amounts above and beyond that which is commonly regarded as that which is statutorily required." The court interpreted Hanna's fee agreement as requiring "the additional sums earned in the January 2016 through 2017 period" "to be essentially 'split' between defense [*sic*] counsel and the client, resulting in a payment due from the client to her attorney (and per the contract not from the manufacturer) of approximately $15,000 to compensate for the additional time spent (in lieu of any hourly rate as the court reads the contract) in obtaining this additional benefit for the client."

The court found "these fees for an above-and-beyond settlement amount were a part of reasonably incurred attorney fees, and as would be the case with any reasonably incurred fees,

13

whether they are calculated based upon hourly rates, contingency or some mixture thereof, such fees can be and should be assessed against the defendant where the plaintiff prevails . . . ." Finding the additional $15,000 amount should be paid by Mercedes-Benz, rather than Hanna, the court added it to the $45,869 awarded for the period through January 21, 2016, for "a total of $60,869 to be paid by defendant as the reasonable attorney fee incurred in this action."[7] The court explained it regarded "the additional sums earned post January 21, 2016 (to wit a portion of the additional settlement amount) as being additional reasonable attorney fees since it is viewing them as an amount designed to [ensure] that the defense [*sic*] counsel would be compensated for any additional time and effort in obtaining a better than usual result in lieu of using a straight hourly rate."

The court provided no explanation for its award of costs.

## DISCUSSION

1. *This Court Has Jurisdiction To Consider Hanna's Appeal of the Order Awarding Attorney Fees and Costs*

The section 998 offer accepted by Hanna provided, "This offer is made pursuant to *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 323 Cal.Rptr.2d 740, in that a judgment will not be entered. Rather, the Complaint will be dismissed with prejudice."[8] On January 30, 2017 Hanna filed a notice of the

---

[7]     The court cautioned, "However, defense [*sic*] counsel is ordered not to make any deduction from the plaintiff's recovery to doubly compensate itself for this $15,000 amount as 'additional fees' above and beyond the $60,869 now being ordered."

[8]     This court in *Goodstein v. Bank of San Pedro, supra,* 27 Cal.App.4th at page 906, held, although section 998, subdivision (b), states a qualifying settlement offer must "allow

14

parties' settlement on Judicial Council mandatory form CM-200, checking the box that indicated the settlement was conditional and stating, "The settlement agreement conditions dismissal of this matter on the satisfactory completion of specified terms that are not to be performed within 45 days of the date of the settlement. A request for dismissal will be filed no later than . . . June 15, 2017."

Although the notice of settlement did not request dismissal of the action (and, to the contrary, expressly stated a request for dismissal would be filed in the future), on January 30, 2017 the court ordered the entire action dismissed. Its minute order of that date states, "In response, to the parties settlement, pursuant to CCP 664.6 and CCP 998, the entire action . . . is order[ed] dismissed with the court retaining jurisdiction to enforce the settlement." The order of dismissal is recorded in the superior court's registry of actions, which states, "Dismissed/Disposed" in Department 12 at 10:00 a.m. on January 30, 2017.[9]

---

judgment to be taken," an offer that requires a voluntary dismissal with prejudice meets the requirements of that provision. "The word 'judgment' in Code of Civil Procedure section 998 indicates that the statute contemplates that an offer to compromise which is accepted will result in the final disposition of the underlying lawsuit; the statute does not indicate any intent to limit the terms of the compromise settlement or the type of final disposition."

[9]     Although the registry of action reflecting the order of dismissal and the notice of the parties' settlement is included in Hanna's Appendix, the January 30, 2017 minute order and notice of settlement are not. On our own motion, pursuant to California Rules of Court, rule 8.155(a)(1)(A), we augment the record to include the January 30, 2017 minute order and settlement notice.

15

Without acknowledging the January 30, 2017 order of dismissal, Mercedes-Benz contends the May 16, 2017 order awarding Hanna attorney fees and costs is not appealable and Hanna's appeal must be dismissed because it was not included in a judgment or made following entry of an order of dismissal. (See Code Civ. Proc., § 904.1, subd. (a)(1) [authorizing appeal from a final judgment] & (2) [authorizing appeal from an order made after a judgment made appealable by subdivision (a)(1)]; see generally *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21 ["a reviewing court lacks jurisdiction on direct appeal in the absence of an appealable order or judgment"].)

Although the order of dismissal as originally filed was not signed by the court (see Code Civ. Proc., § 581d ["[a]ll dismissals ordered by the court shall be in the form of a written order signed by the court"]), on April 24, 2019 the superior court reentered a signed version of its order, "nunc pro tunc to 1/30/17."[10] Accordingly, the court's May 16, 2017 order awarding Hanna attorney fees and costs is properly before us as an order made after an appealable order or judgment pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2).

Moreover, even if the order awarding fees and costs were not appealable under Code of Civil Procedure section 904.1, subdivision (a)(2), it would be within our jurisdiction to review under the collateral order doctrine: "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct

---

[10] We augment the record to include the signed version of the order of dismissal on our own motion.

16

appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368; see *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [an otherwise interlocutory order is directly appealable "if the order is a final judgment against a party in a collateral proceeding growing out of the action"].)

"To qualify as appealable under the collateral order doctrine, the interlocutory order must (1) be a final determination (2) of a collateral matter (3) and direct the payment of money or performance of an act." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015-1016.) The order awarding Hanna legal fees and costs satisfies all three of these criteria and is appealable. (See *Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 432 [order awarding attorney fees after resolution of the merits of the suit by stipulation of the parties was appealable as a final determination on a collateral matter requiring payment of money].)

### 2. *Recovery of Attorney Fees Under the Song-Beverly Act*

A prevailing buyer in an action under the Song-Beverly Act "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code, § 1794, subd. (d); see *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 35 ["[t]he 'plain wording' of section 1794, subdivision (d) requires the trial court to 'base' the prevailing buyer's attorney fee award

17

'upon actual time expended on the case, as long as such fees are reasonably incurred—both from the standpoint of time spent and the amount charged"'; italics omitted].)  As discussed, Hanna and Mercedes-Benz repeated this language and expressly incorporated section 1794, subdivision (d), into their settlement agreement.

 '"The statute "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable.  These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved.  If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount.  A prevailing buyer has the burden of 'showing that the fees incurred were "allowable," were "reasonably necessary to the conduct of the litigation," and were "reasonable in amount.""""  (*Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 840 (*Etcheson*); accord, *Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470 (*Goglin*).)

 We review a trial court's order awarding attorney fees and costs under the Song-Beverly Act for abuse of discretion.  (*Etcheson*, *supra*, 30 Cal.App.5th at p. 840; *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 703.)  ""We presume the trial court's attorney fees award is correct, and '[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated."""  (*Etcheson*, at

18

p. 840.) However, "when the record affirmatively shows the trial court's discretionary determination of fees pivoted on a factual finding entirely lacking in evidentiary support, the matter must be reversed with instructions to redetermine the award." (*Id.* at p. 841; see *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 435, fn. 10.)

"[W]here an issue of entitlement to attorney fees and costs depends on the interpretation of a statute, our review is de novo." (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1258.) Similarly, the interpretation of a written instrument, including an attorney retainer agreement, is reviewed de novo in the absence of any conflict in extrinsic evidence presented to clarify an ambiguity. (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111.)

3. *Hanna Is Entitled To Recover Reasonable Attorney Fees for Legal Services Performed After the January 2016 Section 998 Offer To Compromise*

In the trial court Mercedes-Benz argued Hanna was not entitled to recover attorney fees for legal services provided after its January 2016 section 998 offer because she unreasonably refused to accept that offer and failed to engage in good faith negotiations after it was made. Mercedes-Benz essentially repeats that argument on appeal to defend the trial court's ruling limiting Hanna's post-January 21, 2016 fees to $15,000.

Mercedes-Benz's argument ignores the unfavorable aspects of its January 2016 offer, which, among other terms, required Hanna to return an automobile she no longer possessed and to sign a general release with undisclosed terms. Both of those provisions were removed from the January 2017 section 998 offer to compromise that was the basis for the parties' settlement.

Rejecting a settlement offer because of unfavorable terms is neither unreasonable nor a permissible ground for denying an award of attorney fees under the Song-Beverly Act. (*Etcheson*, *supra*, 30 Cal.App.5th at pp. 845-846 ["where a defendant's settlement offer contains unfavorable provisions or is otherwise invalid, as [defendant's] offers were here, it is not unreasonable for a plaintiff to reject that offer"]; *Goglin*, *supra*, 4 Cal.App.5th at p. 471 [not unreasonable to reject prelitigation settlement offer with a broad general release and a confidentiality provision]; *McKenzie v. Ford Motor Co.*, *supra*, 238 Cal.App.4th at pp. 705-708 [same].)

Where a party continues to litigate after receiving a settlement offer, absent a finding that failure to resolve the case through negotiation was unreasonable or solely attributable to counsel's desire to generate more fees, additional fees incurred to establish liability or damages, including evidence of willfulness necessary to recover civil penalties, are properly included in an award of fees under Civil Code section 1794, subdivision (d). (See *Etcheson*, *supra*, 30 Cal.App.5th at pp. 846, 850; *Goglin*, *supra*, 4 Cal.App.5th at p. 472.) Here, the trial court expressly found that Hanna "in January 2017 obtained a settlement offer considerably in excess of that which had been offered in January 2016." Far from finding Hanna's attorneys continued to litigate simply to generate more fees, the court recognized the efforts of Hanna's counsel after January 2016 were responsible for a substantial increase in her recovery and thus "a part of reasonably incurred fees." The court's findings are supported by substantial evidence: Not only did Hanna's attorneys eliminate the requirements that she return the automobile and enter into a general release but also her counsel successfully negotiated for

20

the payment of a substantial sum in addition to Hanna's actual damages, which had been the basis for Mercedes-Benz's January 2016 offer.

4. *The Trial Court Erred by Failing To Use the Lodestar Method for the Award of Fees Incurred After the January 2016 Section 998 Offer To Compromise*

a. *The trial court misread Hanna's retainer agreement*

Finding that between January 21, 2016 and January 27, 2017 Hanna's counsel was able to increase Mercedes-Benz's settlement offer to include payment of a sum in excess of her actual damages, the trial court correctly concluded Hanna was entitled under the parties' settlement agreement and Civil Code section 1794, subdivision (d), to recover her reasonable attorney fees incurred after January 21, 2016. However, rather than use the lodestar method to calculate post-January 21, 2016 fees, as it had for its determination of reasonable fees up to that date, the court looked to Hanna's retainer agreement and applied its provision for Hanna's attorneys to receive 40 percent of any recovery in excess of actual damages to cap additional fees at $15,000 (rather than the requested additional base amount of $126,843.50).[11]

The trial court was entitled to consider Hanna's retainer agreement in awarding her fees. (See *Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 748, 757 ["the attorney's fee agreement is relevant and may be considered"

---

[11] The trial court apparently accepted Mercedes-Benz's calculation that Hanna's actual damages were approximately $22,500 and, therefore, that she had received approximately $37,500 in additional damages from the $60,000 settlement payment. Forty percent of $37,500 is $15,000.

even though the statutory fees provision at issue in the case, which provided for payment of "reasonable attorney's fees incurred," "does not compel any particular award"].)[12]  But the court fundamentally misinterpreted the agreement and then misapplied its own mistaken interpretation to the determination of the reasonable fees incurred by Hanna after January 21, 2016.

As discussed, the retainer agreement between Hanna and the O'Connor & Mikhov law firm expressly provided that "[a]ttorney's fees are based on the time expended" at a range of hourly rates specified for partners, associates and legal assistants.  Although those fees are "contingent upon an acceptable settlement being achieved or a successful verdict at trial," the agreement explained, "[t]he above contingent fee is not based on a percentage basis."  The time-expended basis for

---

[12]     Hanna has forfeited her argument that the retainer agreement is privileged and should not have been considered by the trial court.  As discussed, although Hanna objected to the trial court's April 25, 2017 order requiring her to produce the fee agreement, the court withdrew that aspect of its order and instead required Mercedes-Benz to produce the documents on which it had relied to state its understanding of Hanna's fee arrangement with her attorneys.  The record on appeal fails to show Hanna objected to the court's May 2, 2017 modified ruling or responded to Mercedes-Benz's contention any attorney-client privilege had been waived by her husband's production of a copy of the agreement, as set forth in Julius's May 2, 2017 declaration and Universal's May 5, 2017 declaration filed in response to the trial court's May 2, 2017 ruling.  (See *Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [an appellate court will generally not consider procedural defects or erroneous rulings where an objection could have been but was not made to the lower court].)

determining attorney fees was reiterated in the next sentence of the agreement, which stated, if a lawsuit is required, trial counsel would receive "a fee of his actual time expended on the case calculated at his customary hourly rate" or other fee as might be agreed upon by the client. Following this description of the method for calculating attorney fees, the retainer agreement stated, if the law firm was able "to recover additional damages above and beyond Client's actual damages"—for example, civil penalties or waiver of a mileage/use offset—then "40% of those additional damages shall be due the Law Firm as additional attorney's fees." Contrary to the trial court's reading, this language clearly specified that O'Connor & Mikhov would receive its hourly rate for all time expended on the litigation, whether directed to the recovery of actual or additional damages, but it would also be entitled to a bonus equal to 40 percent of all additional damages recovered. By misreading this language as providing for a percentage recovery of additional damages "in lieu of an hourly rate" for those legal services, and then using its faulty interpretation of the retainer agreement as the sole basis for awarding only $15,000 of the fees incurred after January 21, 2016, the trial court committed plain error.

> b. *A fee award under the Song-Beverly Act may not be based on a percentage of the plaintiff's recovery*

Even if the trial court's interpretation of the retainer agreement were correct, however, it would still have been error to award fees for legal work performed by O'Connor & Mikhov after January 21, 2016 based entirely on the law firm's percentage share of civil penalties or other "excess" monetary recovery, rather than using the lodestar figure—time spent multiplied by reasonable hourly compensation for each attorney (see *Ketchum*

23

*v. Moses* (2001) 24 Cal.4th 1122, 1131-1132)—as specified in the parties' settlement agreement and mandated by Civil Code section 1794, subdivision (d), as the starting point for its analysis.

While the trial court has broad discretion to increase or reduce the proposed lodestar amount based on the various factors identified in case law, including the complexity of the case and the results achieved, the court's analysis must begin with the "actual time expended, determined by the court to have been reasonably incurred." (Civ. Code, § 1794, subd. (d).) "[I]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing buyer/plaintiff's damages or recovery in a Song-Beverly Act action." (*Warren v. Kia Motors America, Inc., supra,* 30 Cal.App.5th at p. 37; see *Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 105, fn. 6 [in a case in which there is a contingency fee agreement, "for purposes of section 1794, subdivision (d), a prevailing buyer represented by counsel is entitled to an award of reasonable attorney fees for time reasonably expended by his or her attorney"]; see also *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818 [even though the clients did not have a personal obligation to pay for legal services out of their own assets under the terms of a contingency fee agreement, attorney fee award under the Song-Beverly Act must be based on the lodestar adjustment method].)

Citing *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 815-816, Mercedes-Benz argues Hanna's claim for an award of attorney fees based on the lodestar method is "incongruous" with a contingency fee agreement. Nothing in *Levy* supports that assertion. Indeed, after discussing *Aetna Life &*

24

*Casualty Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 865, which reversed a trial court's fee award because it had been based on a percentage of the plaintiffs' recovery, consistent with a contingent fee agreement, rather than consideration of the number of hours spent on the case and reasonable hourly compensation for the attorney, the *Levy* court expressly noted, "Our case did not involve a contingent fee arrangement." (*Levy*, at p. 815.)

### c. *Mercedes-Benz's speculative efforts to justify the trial court's decision are misplaced*

In an effort to justify the trial court's reduction of post-January 21, 2016 attorney fees from the $126,843.50 additional base amount requested to $15,000, Mercedes-Benz argues the court may have been influenced by what it characterizes as Hanna's misrepresentations about the nature of her retainer agreement with O'Connor & Mikhov, including with respect to the 40 percent bonus feature, suggesting the court may have found Hanna and her attorneys not to be credible and applied its skepticism about their honesty to the substance of the billing statements submitted with the fee motion. Mercedes-Benz also contends the court may have reduced Hanna's fee request because it found the total sought was unreasonable, her attorneys overly litigated the case, or they had submitted padded or duplicative bills.

It may be permissible for us to presume the trial court considered the relevant lodestar adjustment factors to reach its fee award when confronted with a silent record. (See, e.g., *Levy v. Toyota Motor Sales, U.S.A., Inc.*, *supra*, 4 Cal.App.4th at p. 816 ["Although the trial court found the items submitted in support of the fee claim were grossly exaggerated, there is nothing in the

record indicating how the court arrived at the amount of the award ultimately made. In the circumstances, we must presume the court, using its sound discretion, found the sum awarded reasonably incurred and reasonable in amount"].) However, where, as here, the court expressly states a legally erroneous ground for its ruling, we cannot infer its exercise of discretion rested on a wholly different basis. (*Etcheson*, *supra*, 30 Cal.App.5th at pp. 845-846 [where court based its drastic reduction of plaintiffs' fee request on its view that continuing to litigate the case following a settlement offer was unnecessary, "we cannot indulge an inference that the trial court's order . . . was based on a legitimate lodestar assessment of the overall reasonableness of counsel's fees based on rates, duplication of effort, or complexity"]; *McKenzie v. Ford Motor Co.*, *supra*, 238 Cal.App.4th at p. 705 ["[w]hen the court states its reasons explicitly [for reducing the fees requested], we cannot infer its exercise of discretion rested on a wholly different basis"].)

In sum, we reverse the trial court's attorney fee award and remand for redetermination, using the lodestar method, of the reasonable attorney fees incurred by Hanna in connection with the entire prosecution of her lawsuit.

5. *The Trial Court Did Not Abuse Its Discretion in Disallowing Costs for Hanna's First Expert*

The trial court disallowed as recoverable costs, without explanation, the $2,137 paid to Hanna's first expert, Thomas Lepper, to inspect Hanna's vehicle. On appeal Mercedes-Benz defends that ruling, arguing that expense was unnecessarily incurred because Hanna replaced Lepper as her expert. Noting that Mercedes-Benz provided no citation to the record showing Lepper had been withdrawn, Hanna contends, because Lepper

26

conducted the inspection in February 2015, shortly before the vehicle was declared a total loss, the cost for the inspection was reasonably and necessarily incurred.

Absent findings or any explanation from the trial court, we presume the court found the cost for Lepper to inspect Hanna's car was not reasonably incurred, as required by section 1794, subdivision (d), for the recovery of costs; and we review the record to determine whether that implied finding is supported by substantial evidence. (See *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 [where abuse of discretion is the applicable standard of review, "'[t]he judgment of the trial court is presumed correct; all intendments and presumptions are indulged to support the judgment; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive'"]; *Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512 [under abuse of discretion standard, "'[i]f the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence'"].)

Substantial evidence supports the finding the cost for Lepper to inspect Hanna's vehicle was not reasonably incurred. As discussed, Julius's April 12, 2017 declaration, read in conjunction with Mercedes-Benz's opposition memorandum, established Lepper was replaced by Darrell Blasjo as Hanna's expert and Lepper's work product was not provided to Blasjo for his use. Although Lepper's pre-accident inspection may have been necessary if the vehicle's value before being declared a total loss was somehow relevant to Hanna's damage claim or was a factor in Mercedes-Benz's settlement offers, Hanna did not

27

attempt to justify the expense on that basis in the trial court. "'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.'" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997; accord, *In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695.)

## DISPOSITION

The May 16, 2017 order awarding fees and costs is reversed, and the matter remanded for a redetermination of attorney fees in a manner consistent with this opinion. Hanna is to recover her costs on appeal.

PERLUSS, P. J.

We concur:


SEGAL, J.                          FEUER, J.