Filed 8/16/21  Eskenazi v. 310 Culver CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JACK ESKENAZI,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>310 CULVER, LLC et al.,<br><br>    Defendant, Cross-complainant and Respondent. | B302398<br><br>(Los Angeles County Super. Ct. No. BC673069) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Tatone Law, Michelangelo Tatone and Stephen Ruotsi for Plaintiff, Cross-defendant and Appellant Jack Eskenazi.

Delman Vukmanovic, John Vukmanovic and Dana Delman, for Defendant, Cross-complainant and Respondent 310 Culver, LLC.

No appearance by Plaintiff and Respondent Coby Halavais.

————————

Jack Eskenazi appeals the judgment entered in favor of 310 Culver LLC (Culver) after the court granted summary judgment for Culver on Eskenazi's complaint for breach of contract and related claims and later found for Culver in a bench trial on Culver's cross-complaint for breach of contract and declaratory relief. Eskenazi primarily contends the court's finding at trial that he materially breached a settlement agreement is not supported by law or substantial evidence. He also challenges the court's order pursuant to Code of Civil Procedure section 386.6 requiring him to pay $8,424.80 in attorney fees to Culver's counsel, Coby Halavais, who filed an interpleader action in connection with the settlement funds at issue. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Prior Litigation*

On January 20, 2015 Culver, through its agents, purchased at a foreclosure sale real property located in Playa Del Rey for $578,000. In March 2015 Culver discovered the property was subject to a cleanup and abatement order issued by the state water resources control board. Culver sued the seller and the foreclosure trustee, among others, alleging the cleanup order was not a matter of public record and had not been disclosed during the sale. Culver sought rescission of the sale. (Super Ct. L.A. County, No. YC070575, the rescission action.)

Eskenazi, through his company, Pemoll LLC, is the assignee of a promissory note in the original amount of $272,000 secured by a recorded second position deed of trust on the Playa Del Rey property. Eskenazi and Pemoll filed a lawsuit naming the seller of the property and Culver, among others, as defendants and asserting Eskenazi was entitled to payment of

2

the balance due on his note from the proceeds of the foreclosure sale. (Super. Ct. L.A. County, No. BC588525, the Pemoll action.)

In October 2015 the court deemed Culver's rescission action and the Pemoll action related.

### 2. *The Global Settlement Agreement*

In December 2016 all parties to the related lawsuits entered into a global settlement to rescind the sale of the property and return the proceeds of the sale to Culver as restitution. To obtain Eskenazi's agreement to the global settlement, Culver agreed to buy Eskenazi's position as the holder of the promissory note secured by a second deed of trust on the property.

Pursuant to the settlement agreement, Culver promised to pay Eskenazi $60,523.51 from its restitution award following entry of judgment in the rescission action. The agreement provided $60,523.51 from the award would be held in Culver's counsel's client trust account and "shall be delivered to Eskenazi's attorney, Nicholas Tepper of the Tepper Law Firm, APC . . . within 5 business days of 310 Culver's receipt of funds from the Court in the [Rescission] Action. . . . Contemporaneous therewith, Eskenazi shall deliver an original and notarized Assignment of [his] Deed of Trust recorded with the Los Angeles County Recorder on July 28, 2000 as Instrument No. 00-1178681 along with the original Promissory Note and an allonge thereto transferring all right, title and interest in and to such Note and Deed of Trust to 310 Culver, LLC, or its designee or nominee; the form of which is attached hereto as Exhibit 'B[.'] 310 Culver shall be responsible for recording the Assignment of Deed of Trust and taking any such other action as necessary to perfect the assignment of interests thereunder. . . . Finally [Eskenazi] shall

3

dismiss its action numbered BC 588525 in its entirety and with prejudice within 15 days of the Court's entry of Judgment in the Rescission Action."

In April 2017 the court entered a judgment in the rescission action, rescinding the sale and awarding restitution.[1] Pursuant to the settlement agreement, $60,523.51 of the award was set aside in Halavais's client trust account, to be paid to Eskenazi in exchange for the original promissory note and notarized assignment of the second deed of trust.

In June 2017 Halavais informed Eskenazi that Culver was in receipt of the funds in the rescission action from which it would pay Eskenazi. After some delay Eskenazi responded, telling Culver he had lost the promissory note and offering to provide his sworn declaration attesting to the contents of the note and his exhaustive search for it. Culver refused and claimed it had no obligation to pay Eskenazi due to his failure to perform his side of the bargain. After Eskenazi repeatedly claimed entitlement to the $60,523.51 despite his inability to perform, Halavais filed an interpleader action and deposited the disputed amount with the court.

3. *Eskenazi's Complaint and Culver's Cross-complaint*

On August 21, 2017 Eskenazi filed the complaint in the case at bar alleging causes of action against Culver and Halavais for breach of contract, breach of the covenant of good faith and fair dealing, conversion and breach of fiduciary duty. Eskenazi alleged as to all causes of action that Culver and its counsel had refused to pay him the $60,523.51 he was owed under the settlement agreement.

---

[1] The court's order after trial erroneously listed the date of entry of judgment in the rescission action as August 2018.

4

Culver filed a cross-complaint, alleging causes of action for breach of contract and declaratory relief. Culver alleged it had tendered its performance upon receipt of the money in the rescission action; Eskenazi had failed to, and could not, perform because he did not have the documents he was required to provide to Culver; and, accordingly, Culver had no obligation to make the payment to him under the settlement agreement. It requested the court order the release of the court-deposited funds to it in the amount of $60,523.51, plus prejudgment interest.

4. *Culver's Motions for Summary Judgment*

Culver filed two motions for summary judgment or, in the alternative, summary adjudication, one directed to Eskenazi's complaint, and the other, to its own cross-complaint. In January 2019 the court granted Culver's motion for summary judgment on Eskenazi's complaint, concluding Eskenazi had failed to perform his obligations under the settlement agreement, had no entitlement to the settlement money and thus could not prevail on any of his causes of action. The court denied Culver's motion for summary judgment on its cross-complaint, finding Culver had failed to demonstrate in its motion any resulting damage, an essential element of a breach of contract claim, and failed to establish as a matter of law in regard to its declaratory relief action that it was entitled to retain the settlement funds if Eskenazi did not provide the original documents promised.[2]

---

[2] Eskenazi did not include the summary judgment motions and opposition papers in the record provided on appeal. We granted Culver's motion to augment the record to include the court's January 9, 2019 minute order and its March 8, 2019 order relating to the court's summary judgment findings and orders. The court's order after trial indicates the court had also granted

5

### 5. *The Court Trial on Culver's Cross-complaint*

The parties waived their right to a jury on the contract claim in Culver's cross-complaint; and the matter, along with the declaratory relief claim, was tried to the court. Prior to trial the parties stipulated (1) they had entered into a settlement agreement in which they agreed Culver would pay Eskenazi $60,523.51 in exchange for the originals of the deed of trust and promissory note to Culver; (2) Eskenazi lost or misplaced the original documents and was not able to provide them to Culver; and (3) Culver performed all of its obligations under the settlement agreement "except payment of sums that would become due upon receipt of the subject original documents."

After trial in which several witnesses testified, the court found Eskenazi had breached the settlement agreement by not providing Culver with the promised documents. The court also granted Culver's request for declaratory relief, ruling that, due to Eskenazi's nonperformance, Culver had no obligation to pay Eskenazi any money under the settlement agreement. The court entered judgment for Culver in the amount of $60,523.51, plus prejudgment interest in the amount of $12,709.94. The court also ordered Eskenazi to pay Halavais $8,424.80 in connection with the interpleader action. The court indicated it would consider Culver's requests for attorney fees following a noticed motion.

Eskenazi filed a timely notice of appeal.

## DISCUSSION

Eskenazi does not challenge the trial court's order granting Culver and Halavais summary judgment on his complaint. Rather, limiting his briefing to the court trial on Culver's cross-

Halavais's separate motion for summary judgment on Eskenazi's complaint.

6

complaint, Eskenazi argues the court erred in finding he materially breached the agreement by failing to provide Culver with the original promissory note, thereby excusing Culver's obligation to purchase the note for $60,523,51.

1. *Principles of Contract Interpretation and Standard of Review*

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 288; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see Civ. Code, § 1636.) That intent is interpreted according to objective, rather than subjective, criteria. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.) When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement. (See Civ. Code, §§ 1638 ["language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].) The words are to be understood "in their ordinary and popular sense" (Civ. Code, § 1644); and the "whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

When no ambiguity is asserted or there is no conflicting extrinsic evidence concerning the meaning of a purported ambiguity in the contract, the trial court's interpretation of a contract is a legal determination subject to de novo review. (*City*

7

*of Hope National Medical Center v. Genentech, Inc.* (2008)
43 Cal.4th 375, 393-394; *Garcia v. Truck Ins. Exchange* (1984)
36 Cal.3d 426, 439; see *Hanna v. Mercedes-Benz USA, LLC* (2019)
36 Cal.App.5th 493, 507 ["in the absence of any conflict in
extrinsic evidence presented to clarify an ambiguity," written
agreements are interpreted de novo].)  We review the trier of
fact's resolution of disputed facts for substantial evidence.
(*Crocker National Bank v. City and County of San Francisco*
(1989) 49 Cal.3d 881, 888; *In re Marriage of Kamgar* (2017)
18 Cal.App.5th 136, 144.)

> 2. *The Trial Court Did Not Err in Finding Eskenazi*
>    *Breached the Settlement Agreement*

To prevail on its cause of action for breach of contract,
Culver was required to demonstrate (1) a contract existed; (2) it
performed or tendered performance, or its performance was
excused; (3) Eskenazi breached; and (4) resulting damage.
(See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811,
821; *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437,
453; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014)
223 Cal.App.4th 221, 228.)

As discussed, Culver and Eskenazi stipulated to the
existence of the agreement, Eskenazi's inability to provide the
documents promised and Culver's performance of its obligations
under the agreement except payment of the agreed-upon sum.
The only issue in dispute was whether Eskenazi's failure to
provide the original note constituted a breach that excused
Culver's performance.

Citing well established law that only a material breach will
excuse the innocent contracting party's performance (see
*De Burgh v. De Burgh* (1952) 39 Cal.2d 858, 863 ["in contract law

a material breach excuses further performance by the innocent party"]; *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 [not every failure by the plaintiff to perform will excuse a defendant's performance; only a failure to perform that constitutes "a material breach of the contract" may discharge the other party from its duty to perform]), Eskenazi argues he could have substantially performed his obligations by providing a sworn declaration as to the contents of the promissory note.  It was Culver, he argues, that prevented his substantial performance by failing to accept a sworn declaration in lieu of the promissory note.

Although the court did not use the words "material breach" or "substantial performance," the court plainly rejected this argument, concluding the parties had contracted specifically for the promissory note, not a sworn declaration, and it did not have the power to rewrite their agreement.  Eskenazi asserts the court erred.  The purpose of the contract, he asserts, was to assign to Culver Eskenazi's position as second deed of trust holder on the property.  Citing California Uniform Commercial Code section 3309, subdivision (a), Eskenazi asserts this purpose could have been accomplished without Culver's actual possession of the promissory note, thereby making his failure to provide the promissory note, at most, a nonmaterial breach.

California Uniform Commercial Code section 3309, subdivision (a), does not support Eskenazi's claim.  It provides, "A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot

9

reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."  Eskenazi is not seeking to enforce the note (nor is Culver a debtor on that note).  To the extent Eskenazi asserts this section of the Commercial Code would permit Culver to enforce the note in any subsequent action even without possession of the note, thus making the failure to obtain the actual note from Eskenazi "immaterial," Culver was not in possession of the note when it was lost.  Accordingly, its ability to benefit from this section of the Commercial Code in any subsequent enforcement action is questionable at best.  (See generally *Crystaplex Plastics, Ltd. v. Redevelopment Agency* (2000) 77 Cal.App.4th 990, 998 [section 3309 requires the person be "in possession of the instrument and entitled to enforce it when loss of possession occurred"].)

Eskenazi's reliance on *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 is similarly misplaced.  In *Debrunner* the plaintiff in an action seeking a declaratory judgment and injunction to stop an impending foreclosure argued the defendant bank that owned the deed of trust could not foreclose because it did not possess or own the original promissory note.  The court of appeal rejected this argument, holding a foreclosing party in possession of a deed of trust need not be in possession of the original promissory note in order to initiate foreclosure; assignment of a deed of trust is valid even without the actual transfer of the underlying promissory note.  (*Id.* at p. 440.)

Citing *Debrunner*, Eskenazi asserts the breach was not material because Culver could always foreclose on the deed of trust Eskenazi could provide to it, despite his inability to provide Culver with the promissory note. However, as discussed, this action involves neither enforcement of the promissory note nor a nonjudicial foreclosure, but a breach of the settlement agreement. Whether or not possession of the deed of trust would be sufficient for that purpose in any subsequent action Culver might have against the promisor under the note is irrelevant. Culver expressly bargained for the promissory note and deed of trust, presumably factoring into the negotiated price its existence and the work necessary to enforce it in any subsequent action. Eskenazi failed to perform his part of the bargain.

Eskenazi's substantial performance argument fails for another reason. "Whether a breach is material is usually left to the trier of fact 'to determine from all the facts and circumstances shown in evidence.'" (*Schellinger Brothers v. Cotter* (2016) 2 Cal.App.5th 984, 1002; accord, *Brown v. Grimes, supra,* 192 Cal.App.4th at pp. 277-278 [whether a breach is material depends on "'the importance or seriousness thereof and the probability of the injured party getting substantial performance'"].) When, as here, "no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of the error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics omitted; accord, *Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 82.) Accordingly, we presume, as we must, the testimony at trial supports the trial court's finding Eskenazi's

11

failure to provide the note was a material breach of the settlement agreement.

Finally, Eskenazi's observation the court erred in characterizing his payment obligation under the settlement agreement as a condition precedent to Culver's performance rather than as condition concurrent, while legally correct,[3] is beside the point. The record was undisputed the funds were held in an escrow (or client trust) account; Culver's counsel tendered performance on Culver's behalf by alerting Eskenazi to receipt of the funds; Culver was ready, willing and able to perform; and Eskenazi did not, and could not, perform. Under these circumstances, the court's mistaken characterization of Eskenazi's obligation as a condition precedent rather than condition concurrent had no effect on the court's ruling.

---

[3] The settlement agreement expressly provided that Eskenazi's obligation to provide the original note and Culver's obligation to pay the settlement funds were "contemporaneous" with each other, in other words, mutual concurrent conditions. (Compare Civ. Code, § 1436 ["[a] condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed"] with Civ. Code, § 1437 ["[c]onditions concurrent are those which are mutually dependent, and are to be performed at the same time"]; see *Rubin v. Fuchs* (1969) 1 Cal.3d 50, 54 ["The rule is that provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. [Citations.] Instead, whenever possible the courts will construe promises in a bilateral contract as mutually dependent and concurrent"]; *Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1183 ["'courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect'"].)

3. *The Court's Ruling on Culver's Declaratory Relief Action Provides an Independent Ground for Affirming the Judgment*

The court also granted Culver's request for declaratory relief, finding Culver was entitled to retain the $60,523.51 (by then on deposit with the court in the interpleader action), plus prejudgment interest, the same sum it had awarded in the breach of contract claim. (See *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [Code of Civil Procedure section 1060, governing declaratory relief, "does not require a breach of contract in order to obtain declaratory relief only an 'actual controversy.' Declaratory relief pursuant to this section has frequently been used as a means of settling controversies between parties to a contract regarding the nature of their contractual rights and obligations"].)

Because Eskenazi could not perform as provided in the parties' agreement, the court ruled Culver's obligation to acquire the note was excused. In challenging the trial court's decision, Eskenazi contends the ruling, even if compelled by the plain language of the settlement agreement, is nonetheless unfair. Because the purpose of the contract could have been achieved by providing Culver with a certified copy of the deed of trust and a declaration, he insists it is unjust for a court sitting in equity (in the declaratory relief claim) to deny him funds he had been promised. His argument, premised on his alleged ability to substantially perform, fails for the reasons discussed. Simply stated, equity does not demand a different result. (See *Bailard v. Marden* (1951) 36 Cal.2d 703, 708 ["'[c]ourts of equity have no power to make new contracts for the parties . . . [nor] can they reform an instrument according to the terms in which one of the

13

parties understood it, unless it appears that the other party also had the same understanding'"].)[4]

4. *The Court Did Not Abuse Its Discretion in Imposing on Eskenazi Costs and Reasonable Attorney Fees in Connection with the Interpleader Action*

Code of Civil Procedure section 386.6, subdivision (a), provides, "A party to an action who follows the procedure set forth in Section 386 or 386.5 [to file an interpleader action] may insert in his motion, petition, complaint, or cross-complaint a request for allowance of his costs and reasonable attorney fees incurred in such action. In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court. At the time of the final judgment in the action the court may make such further provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may appear proper."

Eskenazi challenges the aspect of the judgment requiring him to pay Halavais $8,424.80 in costs and reasonable attorney fees for filing the interpleader action.[5] We review for abuse of

---

[4] Eskenazi's claim of undue prejudice is difficult to understand. The rescission of the Playa Del Rey real property sale did not change his status as the owner of the note and the holder of a security interest in the property. His right to enforce the note against the debtor remains.

[5] In its written ruling after trial the court explained, "The Complaint in interpleader was required to be filed because Eskenazi pursued what the Court finds is an unmeritiorious claim. 'At the time of final judgment in the action the court may make such further provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may

14

discretion the court's decision pursuant to Code of Civil Procedure section 386.6 to impose on an adverse claimant reasonable attorney fees incurred in connection with the filing of an interpleader action. (*MDQ, LLC v. Gilbert, Kelly, Crowley & Jennett LLP* (2019) 32 Cal.App.5th 702, 712; *Wertheim, LLC v. Omidvar* (2016) 3 Cal.App.5th 921, 925.)

Having found Eskenazi had no right to the money and that his claim to it necessitated the interpleader action, the court concluded it was appropriate for Eskenazi, not Culver, to assume the costs and fees relating to that action. No abuse of discretion occurred. (See *Wertheim, LLC v. Omidvar, supra,* 3 Cal.App.5th at p. 925 [court did not abuse its discretion in imposing on adverse claimant fees relating to interpleader; "trial court could reasonably find it proper that the party that necessitated the interpleader action pay for it"].)

## DISPOSITION

The judgment is affirmed. Culver is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

---

appear proper.' See [Code of Civ. Proc. Section] 386.6. Thus, the Court finds Eskenazi and not [Culver] should bear the fees incurred by 310 Culver through their attorney . . . Halavais in the amount of $8,424.80."

15